1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILBUR WADE ATCHERLEY,        )      No. C 04-4434 MMC (PR)
                              )
            Petitioner,       )      **ORDER DENYING PETITION FOR**
                              )      **WRIT OF HABEAS CORPUS**
v.                            )
                              )
A. SCRIBNER,                  )
                              )
            Respondent.       )
                              )
_____ )

On October 20, 2004, petitioner Wilbur Wade Atcherley, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 20, 2004, this Court ordered respondent to show cause why the petition should not be granted based on petitioner's five cognizable claims for relief: (1) the trial court denied [petitioner's] Sixth Amendment right to counsel by denying his request to substitute new appointed counsel; (2) his waiver of his right to counsel was involuntary because he was forced to choose between proceeding pro se or with incompetent counsel; (3) the trial court deprived him of his right to effective self-representation by denying his reasonable requests for expert witnesses, testing of physical evidence, and advisory counsel; (4) the admission of evidence of prior conduct violated his right to due process; and (5) the trial court's refusal of a defense instruction regarding petitioner's mental state violated his right to due process. Respondent thereafter filed an answer accompanied by a memorandum and exhibits, and petitioner filed a traverse.

**BACKGROUND**

On August 19, 1999, petitioner was charged with three crimes: assault with intent to commit rape, attempted forcible rape, and attempted murder.  All three charges were accompanied by enhancements alleging the personal infliction of great bodily injury.  The information further alleged six prior "strikes," under California's "Three Strikes Law," a prior serious felony conviction, and three prior prison term commitments.  The trial court appointed the Public Defender to represent petitioner.

On November 1, 1999, the trial court denied petitioner's motion for substitute counsel, and on November 3, 1999, granted petitioner's motion to represent himself.  On January 21, 2000, the trial court granted petitioner's motion for appointment of new counsel, and appointed a different attorney from the Office of the Public Defender.

On September 13, 2000, a jury found petitioner guilty as charged, finding true all enhancements.  On September 19, 2000, petitioner admitted the allegations of the six prior felony "strike" convictions and the trial court granted the prosecution's motion to dismiss the charge of attempted forcible rape.  On November 3, 2000, the trial court sentenced petitioner to a term of 25 years to life plus 11 years.  Also on that date, in a separate case,[1] petitioner was sentenced to a term of 25 years to life, such sentence to be consecutive to the sentence imposed in the instant case.

Petitioner appealed.  On December 23, 2003, the California Court of Appeal filed an unpublished opinion in which it remanded for the limited purpose of the trial court's conducting a hearing on the amount of restitution payable to the victim, and in all other respects affirmed the judgment.  See People v. Atcherley, No. H02292, slip op. (Cal. Ct. App. Dec. 23, 2003) (hereinafter "Slip Op.") (attached as Resp. Ex. A). On March 24, 2004, the California Supreme Court denied review, see Resp. Ex. B, and on October 4, 2004, the United States Supreme Court denied the petition for a writ of certiorari.  See Atcherley v. California, 543 U.S. 894 (2004).

_____

[1] That case, No. F9985964, was based on offenses alleged to have been committed while petitioner was in jail, to which charges petitioner pled guilty.

1    The following summary of the facts adduced at trial is taken from the summary

2    provided by the California Court of Appeal.  <u>See</u> Slip Op. at 2-6.

3    On May 21, 1999, petitioner knocked on the door of the apartment where Carmen M.

4    lived with a roommate in San Jose, California.  Carmen knew petitioner, and left with him in

5    a car.  Petitioner stopped at a shopping center, stating he was buying a toothbrush, and

6    returned to the car carrying a white bag.  He eventually drove off the freeway in Hollister,

7    California, and asked Carmen to get out of the car, after which he approached Carmen from

8    the back and put his hands on her breasts.  He proceeded to put his hands all over her; she

9    believed petitioner wanted to rape her, and she began yelling for help.  Petitioner then struck

10   her in the face, and when she tried to kick him, he threw her to the ground, kicked her in the

11   ribs, picked her up by the hair and squeezed her neck with both hands.  At that point, Carmen

12   lost consciousness.  She eventually came to at the side of the road and, after several cars

13   passed by her without stopping, she crawled to the middle of the road.  Eventually, a white

14   station wagon stopped to help.  Paramedics found her with an open gaping laceration that

15   extended from the corner of one side of her jaw, across the throat to the corner of the other

16   side of her jaw.  She had neck wounds, and nerves were cut, affecting her ability to use her

17   tongue for speech or swallowing.  The trauma surgeon opined that her condition was life-

18   threatening.  Slip. Op. at 2-4.

19   Petitioner's wife testified that when petitioner returned home from work on May 21, it

20   was later than usual, he looked nervous, his clothes were wet, his car was dirty with mud, and

21   he did not come home the following day.  On May 23, 1999, petitioner was stopped by a

22   police officer in Phoenix, Arizona, at which time petitioner identified himself and told the

23   officer he was a registered sex offender and that California deputies wanted to talk to him

24   about a possible attempted homicide and kidnapping charges.  Slip. Op. at 4.  On

25   November 1, 1999, while petitioner was being transported by correctional staff, another

26   inmate and a deputy sheriff heard petitioner say, "You know that girl they found in the field

27   with her throat cut?  That was me.  I did that."  <u>Id</u>.

28   The physical evidence admitted at trial showed the following: blood present on a bag

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1  at the scene was consistent with the victim's blood and petitioner's blood; a bloodstain from

2  the car was consistent with commingled DNA from petitioner and victim; other blood

3  samples from the car interior showed one sample consistent with blood from petitioner and

4  the victim and another sample consistent with blood from petitioner and another person; a

5  footprint found at the scene was consistent with petitioner's boot, which, along with a set of

6  petitioner's clothing, was found several weeks after the crime in a plastic bag behind a

7  dumpster at petitioner's apartment complex; and a pager found at the scene was the pager

8  issued to petitioner by his employer.  Id. at 5.

9       Petitioner testified and denied cutting the victim's throat or sexually assaulting her,

10  but admitted to beating her up and leaving her unconscious on the road where she ultimately

11  was found.  He testified that he often purchased drugs through Carmen and a drug dealer

12  named Carlos, that on the night of May 21, petitioner and Carmen drove to a Wal-Mart

13  parking lot where she got out and retrieved a bag of narcotics from another car, and that he

14  also stopped at a Rite-Aid store to buy syringes.  He further testified that he decided he did

15  not want to pay the full amount for the drugs, because Carmen owed his wife some money,

16  and that he gave Carmen two $20 bills with thirty $1 bills wrapped inside, instead of the

17  $600 the cocaine would cost.  Petitioner testified that when Carmen objected, he hit her in the

18  face, she screamed, and he hit her head repeatedly; she fell and began kicking him, he

19  grabbed her by the neck until she stopped struggling and she fell to the ground motionless, at

20  which time he left the scene.  Id. at 5-6.

21       Other witnesses included a Rite Aid pharmacist who was called by the defense and

22  testified that he sold syringes on May 21, 1999 to a person who reported living at the victim's

23  address, and a narcotics expert who testified for the prosecution and stated he had never

24  heard of a drug dealer attempting to kill an intermediary who did not return with enough

25  money.  Id. at 6.

26                                    **DISCUSSION**

27  A.    Standard of Review

28       This Court may entertain a petition for a writ of habeas corpus "in behalf of a person

4

United States District Court
For the Northern District of California

1    in custody pursuant to the judgment of a State court only on the ground that he is in custody

2    in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a);

3    Rose v. Hodges, 423 U.S. 19, 21 (1975).

4         Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district

5    court may not grant a petition challenging a state conviction or sentence on the basis of a

6    claim that was reviewed on the merits in state court unless the state court's adjudication of

7    the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

8    application of, clearly established Federal law, as determined by the Supreme Court of the

9    United States; or (2) resulted in a decision that was based on an unreasonable determination

10   of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

11   § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

12        In determining whether the state court's decision is contrary to, or involved an

13   unreasonable application of, clearly established federal law, a federal court looks to the

14   decision of the highest state court to address the merits of a petitioner's claim in a reasoned

15   decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  In the instant case,

16   because the California Supreme Court summarily denied the petition for review, the highest

17   state court decision to address the merits of petitioner's claims was the California Court of

18   Appeal's affirmance of petitioner's conviction and sentence on direct appeal.

19        A state court decision is "contrary to" clearly established Supreme Court precedent if

20   it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

21   or if it "confronts a set of facts that are materially indistinguishable from a decision of [the

22   Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams,

23   529 U.S. at 405-06; Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).

24        "Under the 'unreasonable application' clause, a federal habeas court may grant the

25   writ if the state court identifies the correct governing legal principle from [the] Court's

26   decision but unreasonably applies that principle to the facts of the prisoner's case."

27   Williams, 529 U.S. at 413.  "[A] federal habeas court may not issue the writ simply because

28   that court concludes in its independent judgment that the relevant state-court decision applied

5

clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence.  "Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.  A state court decision no longer may be overturned on habeas review simply because of a conflict with circuit-based law, although circuit decisions remain relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir. 2003).  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

Even where a state court decision is contrary to or an unreasonable application of clearly established federal law, within the meaning of AEDPA, habeas relief is only warranted if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

Finally, a federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

B.    Petitioner's Claims

1.    Denial of Motion for Substitute Counsel

Petitioner argues that his Sixth Amendment right to counsel was violated by the state court's denial of his pre-trial motion to substitute counsel under People v. Marsden, 2 Cal. 3d 118 (1970).  See id. at 125-26 (providing procedure to be followed where defendant seeks initial substitution of appointed counsel).   In particular, petitioner argues that his appointed

United States District Court
For the Northern District of California

attorney failed to investigate petitioner's case because he believed petitioner to be guilty, and that his relationship with counsel had broken down due to their disagreement over tactics. Petitioner's argument is not persuasive.

In a federal habeas proceeding, the ultimate question on a claim concerning substitution of counsel is whether the trial court's denial of a petitioner's Marsden motion "actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment". See Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000). The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his attorney. See Morris v. Slappy, 461 U.S. 1, 14 (1983). To compel a criminal defendant to undergo a trial assisted by an attorney with whom he has become embroiled in an "irreconcilable conflict," however, is, in essence, to deprive the defendant of any counsel whatsoever. See United States v. Moore, 159 F.3d 1154, 1159-60 (9th Cir. 1998) (finding testimony by defendant and counsel evidenced irreconcilable conflict amounting to breakdown of attorney-client relationship).

When a defendant voices a seemingly substantial complaint about his counsel, a trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. Bland v. Cal. Dep't. of Corrs., 20 F.3d 1469, 1476 (9th Cir. 1994), overruled on other grounds by Schell, 218 F.3d 1017. The inquiry, however, "need only be as comprehensive as the circumstances reasonably would permit." King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992) (internal quotation and citation omitted) (noting record may demonstrate extensive inquiry was not necessary). The proper focus of a trial court's inquiry into a motion to substitute counsel "is on the nature and extent of the *conflict* between defendant and counsel, not on whether counsel is legally *competent*." United States v. Walker, 915 F.2d 480, 483 (9th Cir. 1990), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000) (emphasis in original). The relevant inquiry is whether a dispute exists between attorney and client that rises "to the level of an irreconcilable conflict resulting in a total lack

of communication and depriving [the defendant] of effective assistance of counsel." See Bland, 20 F.3d at 1477.

Here, the trial court held an evidentiary hearing and made a proper inquiry.  The state appellate court determined that any disagreements between petitioner and counsel did not signal a complete breakdown of the attorney-client relationship such as to impede an adequate defense.  Specifically, the state appellate court found:

> On November 1, 1999, a hearing was held on petitioner's request for substitute counsel. Petitioner's lengthy list of complaints included his attorneys failure to follow his requests to have the victim detained as an illegal alien, to obtain her phone records and her false work permit, to retrieve his pager and home phone records for examination of phone numbers, to get a copy of the 911 tape to see if other voices could be heard, to subpoena his own criminal records to show he had not been adjudged a sexually violent predator and to obtain DMV records on the partial license tag found at the scene.
>
> Following defendant's recital of complaints, the trial court inquired of defense counsel his response or explanations. Counsel explained first that he refused to assist defendant's efforts to harass the victim or to plan false testimony.  He described several attempts by defendant to manufacture a defense, either by accusing the victim of molesting his child or by urging his wife to lie about accompanying him. Apparently various questions and suggestions by defendant led defense counsel to believe defendant might be guilty of the crime and was expecting counsel to help him falsify a defense. On the other hand, defense counsel explained how he could still adequately represent defendant at trial, by cross-examining various witnesses and raising issues of reasonable doubt. Defense counsel also noted that various lab reports were just beginning to come in, and none of defendant's suggested investigations were more than highly speculative at this point nor would they have proved defendant's innocence. The trial court denied defendant's request for substitute counsel.
>
> Defendant's complaints fall in[to] three categories: (1) failure to investigate; (2) trial tactics (poor trial preparation); and (3) irreconcilable conflict.
>
> (1) Failure to investigate: defendant claims counsel failed to investigate various phone records, the 911 tape, the victim's background and physical evidence from the crime scene. Defendant insists counsel had a duty to investigate even if he believed defendant was guilty of the crimes charged. (See Lord v. Wood (9th Cir. 1999) 184 F.3d 1083.)
>
> (2) The lack of investigation led to poor trial preparation, according to defendant.  He points out the evidence of third party involvement: blood that did not belong to him nor the victim,

United States District Court
For the Northern District of California

1    nonmatching footprints and tire prints. However, at the time of
     this Marsden hearing (November 1999), some of the forensic
2    evidence was just beginning to be tested. The trial court stated
     that investigation triggered by events at trial would have
3    warranted a continuance.

4    (3) As to the irreconcilable conflict, defendant relies on counsel's
     failure to agree with him on tactics, and his alleged hanging up
5    on his phone calls.

6    On this record, we cannot say the relationship between defendant
     and his appointed counsel had deteriorated to the point that an
7    irreconcilable conflict substantially impaired defendant's right to
     effective representation.
8
     The court satisfied its duty to consider defendant's complaints.
9    The court sought response from counsel and considered the
     information in reaching a decision. Defendant's showing
10   indicates neither constitutionally inadequate assistance nor a
     fundamental breakdown of attorney-client relations. (People v.
11   Webster, 54 Cal.3d [411,] 436 [(1991)]).

12   Once defendant has stated his reasons, "the decision to allow a
     substitution of attorney is within the discretion of the trial judge
13   unless defendant has made a substantial showing that failure to
     order substitution is likely to result in constitutionally inadequate
14   representation. [Citations.]" (People v. Crandell (1988) 46 Cal.3d
     833, 859, 251 Cal. Rptr. 227 disapproved on other grounds in
15   People v. Crayton (2002) 28 Cal.4th 346, 365-365 [sic].) We see
     no such possibility.
16
     Slip. Op. at 7-9.
17
           The state appellate court's denial of petitioner's claim was not "contrary to" clearly
18
     established federal law under § 2254(d)(1).  As discussed above, the governing federal
19
     standard focuses on the conflict between attorney and client, not competency of counsel.
20
     Here, the state appellate court reasonably determined, inter alia, there was no irreconcilable
21
     conflict that substantially impaired defendant's right to representation.
22
           Further, the state appellate court did not "unreasonably" apply federal law in denying
23
     petitioner's claim.  Rather, the appellate court reasonably concluded that the trial court's
24
     findings were supported by the record.  The record shows the trial court provided petitioner
25
     with sufficient opportunity to set forth his complaints about counsel.  See Resp. Ex. C at 3-
26
     34.  At the hearing, petitioner stated he wanted his counsel to have the victim detained
27
     because he feared she would flee before trial, but his counsel would not do so, and that he
28

9

United States District Court
For the Northern District of California

1  asked counsel to file a motion to dismiss the counts for attempted rape and assault with intent

2  to commit rape, but counsel did not do so. Id. at 8. He also described how he and counsel

3  differed on matters of defense strategy and investigation after counsel had received letters

4  from petitioner to petitioner's wife, asking her to say she was at the crime scene with him

5  when she was not. Id. at 9-10. When the trial court invited petitioner's counsel to comment,

6  counsel advised the court that he did not share petitioner's view of the merits of his various

7  requests. Id. In particular, counsel noted that early in his representation of petitioner,

8  petitioner informed him that he had cut the victim's throat because he believed she was

9  molesting his daughter, that petitioner's letters to his wife demonstrated petitioner was trying

10 to fabricate a defense, and that the letters petitioner sent to the victim indicated he was trying

11 to get her fired or deported to prevent her from testifying. Id. at 28. Counsel explained why

12 he did not feel the proposed investigation was appropriate, why he could not seek to detain

13 the victim, and why he did not believe moving for dismissal made sense. Id. at 29-30. As

14 noted by the state appellate court, counsel further stated he could represent petitioner, cross-

15 examine the prosecution witnesses, allow petitioner to testify, and argue reasonable doubt to

16 the jury. Id. at 29-30. The trial court determined petitioner's concerns were not well-

17 founded and that there was no evidence presented that petitioner's counsel was incompetent

18 in developing his trial tactics. Id. at 32-33.

19      The state appellate court reasonably found the trial court satisfied its duty to consider

20 petitioner's complaints and that petitioner's complaints did not evidence a breakdown in

21 communication with counsel. Complaints arising from differences over trial strategy are not

22 appropriate grounds for appointing substitute counsel. Schell, 218 F.3d at 1026 n.8.

23 Petitioner's complaints did not evidence a breakdown in communication between counsel

24 and petitioner, but rather demonstrated they were in communication and that they discussed

25 trial strategy. Resp. Ex. C at 33. The fact that counsel made decisions with which petitioner

26 disagreed does not evidence a total breakdown in communication or an irreconcilable

27 conflict.

28      In sum, the California Court of Appeal's determination as to the denial of petitioner's

10

United States District Court
For the Northern District of California

1    <u>Marsden</u> motion was not contrary to, nor an unreasonable application of, federal law as

2    established by the Supreme Court, nor did it constitute an unreasonable determination of the

3    facts.  28 U.S.C. § 2254(d)(1),(2).  Accordingly, petitioner is not entitled to habeas relief on

4    this claim.

5            2.      <u>Faretta</u> Waiver

6            Petitioner asserts that judicial error from the November 1, 1999 <u>Marsden</u> hearing

7    tainted his November 3, 1999 waiver of his right to counsel under <u>Faretta v. California</u>, 422

8    U.S. 806 (1975).  In particular, petitioner claims his waiver was not voluntary, because his

9    decision was made only because the trial court improperly denied his <u>Marsden</u> motion.

10   Petitioner's argument is not persuasive.

11           A defendant's decision to represent himself and waive the right to counsel must be

12   unequivocal, knowing and intelligent, timely, and not for purposes of securing delay.

13   <u>Faretta.</u> 422 U.S. at 835; <u>United States v. Arlt</u>, 41 F.3d 516, 519 (9th Cir. 1994); <u>Adams v.</u>

14   <u>Carroll</u>, 875 F.2d 1441, 1444 & n.3 (9th Cir. 1989).  Additionally, the defendant must be

15   competent to waive counsel.  <u>Godinez v. Moran</u>, 509 U.S. 389, 396 (1993).  While a trial

16   judge may doubt the quality of representation that a defendant may provide for himself, the

17   defendant must be allowed to exercise his right to self-representation so long as he

18   knowingly and intelligently waives his right to counsel and is able and willing to abide by

19   rules of procedure and courtroom protocol.  <u>See</u> <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 173

20   (1984).

21           Here, the record demonstrates a fully knowing and voluntary waiver of counsel.  At

22   the November 3, 1999 hearing, petitioner notified the trial court that he wanted to represent

23   himself, stating his counsel had "no intent to present the defense [petitioner] wish[ed] to have

24   presented."  Resp. Ex. D at 41.  Petitioner was expressly informed by the trial court, and

25   acknowledged he understood, that he was going to "have all of the responsibilities of self-

26   representation" and would be "opposed by a trained prosecutor."  <u>Id</u>.  Additionally, petitioner

27   made clear that his decision was the result of his own free will.  <u>See id</u>. at 44-45 ("Just so the

28   record is straight, I've had approximately four weeks to think about this.  Everybody in the

**United States District Court**
For the Northern District of California

1   PD's office was aware that if the <u>Marsden</u> was denied I would make the motion to represent

2   myself.  So I've had plenty of time to think about it and that is my wish.").

3   Further, as discussed above, the trial court's denial of petitioner's <u>Marsden</u> motion

4   was neither contrary to nor an unreasonable application of federal law, and the state appellate

5   court applied the correct governing federal standard when it reviewed the record as to

6   whether petitioner's waiver was knowing and voluntary.  <u>See</u> Slip Op. at 9-10 ("Defendant

7   himself informed the court that he wanted to represent himself because appointed counsel did

8   not intend to present the defense he wanted presented. Defendant stated that he was waiving

9   counsel as a result of his own free will.").  In view of the clear record, the state appellate

10  court reasonably concluded that petitioner's waiver was knowing and voluntary.

11  In sum, the California Court of Appeal's finding that there was no error with respect

12  to petitioner's waiver of counsel was not contrary to, nor an unreasonable application of,

13  federal law as established by the Supreme Court, nor did the Court of Appeal make an

14  unreasonable determination of the facts.  28 U.S.C. § 2254(d)(1),(2).  Accordingly, petitioner

15  is not entitled to habeas relief on this claim.

16         3.      Denial of Ancillary Defense Services

17  Petitioner argues that the trial court denied his constitutional right to self-

18  representation by denying various requests he made for defense services and by making

19  injudicious remarks.  In particular, petitioner claims the trial court improperly denied his

20  requests for: (1) appointment of a medical expert who could testify about the handedness of

21  the individual who cut the victim's throat; (2) appointment of a criminalist, DNA specialist,

22  and/or fingerprinting expert to check the items found at the crime scene belonging to the

23  victim and petitioner, as well as shoe prints, for evidence of the presence of a third person;

24  and (3) the assistance of a law clerk, paralegal, or advisory counsel.  Pet. At 15-20.

25  Petitioner further claims the trial court made comments intended to induce him to relinquish

26  his pro se status and to accept appointed counsel.

27  After petitioner successfully moved to represent himself, he filed various pro se

28  requests seeking, <u>inter alia</u>, county funds for ancillary defense services.  <u>See</u> Resp. Ex. L

12

United States District Court
For the Northern District of California

(hereinafter, "CT") at 101-06, 113-14, 116-17, 119, 122-28.  On November 10, 1999, the trial court conducted a hearing and granted petitioner's request for a defense investigator and approved funding for fifteen hours of investigation.  CT at 241.

On November 12, 1999, an in camera hearing was held as to some of petitioner's other motions for discovery and for ancillary defense services.  Id. at 142.[2]  At the in camera hearing, the trial court authorized, inter alia, further funding for petitioner's investigator to attempt to contact a number of witnesses proposed by petitioner, to view photographic evidence, and to meet with petitioner at the jail.  Id. at 236-37.  By additional orders the trial court directed the payment of county funds for various itemized investigative services, as well as for the purchase of a cassette tape player for petitioner's use.  Id. at 236-40.

Subsequently, petitioner requested a continuance of the trial, and on November 17, 1999, the trial was continued to February 7, 2000.  Resp. Ex. E at 9.  Petitioner also complained that he had moved for self-representation because his motion for substitute counsel had been denied, id. at 11; he then asked the court to appoint advisory counsel, id. at 17-18.  The trial court found petitioner's showing was insufficient, further observing that petitioner could proceed either pro se or with counsel, rather than pro se with advisory counsel.  Id.

On November 19, 1999, the trial court held an in camera hearing on petitioner's requests for further ancillary defense services, CT at 160, and approved ten additional hours of investigation time to allow the defense investigator to perform a DMV check on a vehicle sticker found at the crime scene, to obtain a defense copy of the 911 tape, and to pay for the services of a Spanish language interpreter to translate a 3-page document, CT at 240; Pet. Ex. B-6 at 18, 35, 37, 38.  The court also informed petitioner that if he could find a medical doctor to testify that the evidence indicated a left-handed individual inflicted the victim's wounds, he could tell the court what such an expert would cost and the court would "make

---

[2] While respondent notes that the transcript of the November 12 hearing is sealed and has not been disclosed to respondent, petitioner has filed a copy of that transcript with the Court, which the Court has reviewed.  See Pet. Ex. B-4.

**United States District Court**
For the Northern District of California

the order." Pet. Ex. B-6 at 6.  With respect to petitioner's request for a criminalist or DNA specialist to examine the crime scene evidence for the presence of another person, petitioner contended the vehicle sticker found at the scene was associated with such person, and the trial court provided funding for an investigator to check with the DMV to determine whether petitioner's theory was other than speculative.  Pet. Ex. B-6 at 10-17.

On December 3, 1999, the trial court held an in camera hearing on various requests made by petitioner, CT at 204, and authorized county funds for 23 hours of further defense investigation for meeting and conferring with petitioner, the medical expert, and certain witnesses, as well as to obtain a copy of the Sprint PCS phone bill, the Rite Aid pharmacy log sheet, and the victim's employment form from her employer, CT at 239; Pet. Ex. B-7. Petitioner again requested advisory counsel, and the Court denied that request, finding advisory counsel would not be of any assistance in the case, and that, in the court's view, petitioner intended to use advisory counsel for reasons other than actual advice on the merits of the case.  Pet. Ex. B-7 at 19-20.

On January 14, 2000, the trial court held another hearing, at which the prosecutor requested an order directing petitioner to stop threatening the victim.  CT at 468-69; Resp. Ex. J at 9.  After considering four letters from petitioner to the victim, the trial court ordered petitioner to stop telephoning or writing letters to the victim and ordered the defense investigator not to share with petitioner any addresses or phone numbers of prospective prosecution witnesses.  Resp. Ex. J at 12-14.  Also at that hearing, the trial court heard petitioner's complaint that the prosecutor, in violation of a December 6, 1999 order, had failed to turn over evidence for his viewing, id. at 18; the prosecutor and petitioner then agreed to a stipulated procedure by which petitioner's investigator would be allowed to view the physical evidence, take notes, and photograph it, and then convey the notes and photographs to petitioner, id. at 18-19.  Petitioner also asked for an order directing the prosecutor to serve a subpoena on his wife, Elsa Atcherley, and the court allowed petitioner to hand that subpoena to the prosecutor.  Id. at 15-17.

The trial court subsequently held another in camera hearing, at which time petitioner

1    renewed his request for a DNA expert.  Pet. Ex. B-20 at 35.  The trial court determined

2    petitioner's request that blood found at the scene be tested for a third person's DNA was

3    based solely on petitioner's speculation and, accordingly, denied petitioner's request.  On

4    January 21, 2000, petitioner relinquished his right to self-representation, and the trial court

5    granted petitioner's motion for appointment of counsel, and appointed the public defender,

6    who represented petitioner through his trial, CT at 480; Resp. Ex. I at 11-16.

7         The state appellate court reviewed the record, including the sealed transcripts, and

8    found no constitutional violation:

9         Here, our careful review of the record, including several sealed
          transcripts, demonstrates clearly that the trial judges involved
10        patiently and respectfully considered defendant's numerous
          requests for expert witnesses, defense investigative funds and
11        other services, and in fact, granted most. Each trial judge hearing
          defendant's repeated requests emphasized that the funds could be
12        granted only for reasonable, relevant and necessary investigative
          services.

13

14        Defendant now complains of three major areas in which his
          requests were wrongly denied: expert witnesses, separate DNA
15        and fingerprint testing, and advisory counsel. However, most of
          these requests were eventually granted, some at the behest of
16        defendant's appointed advisory [sic] counsel.[3] Defendant fails
          to show how an earlier grant of various requests would have led
17        to different results nor has he made any showing of prejudice to
          his case.

18        As the several trial judges noted, defendant's requests for
19        separate medical experts and his own DNA and fingerprint
          experts were not, at the time they were made in November or
20        December 1999 or early 2000, shown by him to be anything more
          than speculative. In fact, the trial court specifically granted funds
21        for a defense investigator to question each of the prosecution
          witnesses in these areas and to report back if there was some
22        factual basis for the appointment of separate experts.

23        As to defendant's further claim that various trial judges made
          comments demonstrating their animosity toward him, we
24        disagree. The record shows that Judge Ball's comment regarding
          defendant's choice to represent himself after his appointed
25        counsel refused to file a motion to have the victim arrested
          showed familiarity with prior hearings and did not demonstrate
26        judicial anger. As to defendant's request to be provided with a

27        _____
          [3]  As discussed above, advisory counsel was not appointed; petitioner relinquished his
28    right to self-representation and the public defender was appointed as counsel in January
      2000.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    transcript of a prior San Diego County proceeding, Judge Ball
2    reminded him that in acting as his own attorney he needed to
     obtain the transcript himself, the prosecutor was not required to
     obtain it for him. Moreover, defendant failed to object to any
3    comment he believed showed judicial misconduct.

4  Ex. A at 10-11.

5       "[A] criminal trial is fundamentally unfair if the State proceeds against an indigent

6  defendant without making certain that he has access to the raw materials integral to the

7  building of an effective defense."  Ake v. Oklahoma, 470 U.S. 68, 77, 82-83 (1985)

8       With respect to petitioner's federal claims alleging unconstitutional denials of pro se

9  requests for expert witnesses, testing of physical evidence, and advisory counsel, petitioner

10 "can prevail only if he can demonstrate that, prior to the date his direct appeal became final,

11 he had a federal constitutional right to have" such experts and services.  See Jackson v. Ylst,

12 921 F.2d 882, 885 (9th Cir. 1990) (rejecting claim based on denial of proposed expert on

13 eyewitness identification; noting no such issue was presented to Supreme Court in Ake and

14 that to hold state court must appoint such expert would impermissibly create new rule; see

15 also Ake 470 U.S. at 82-83 (holding trial court must appoint psychiatrist for indigent

16 defendant if his or her sanity will be significant factor at trial).  Petitioner has not pointed to

17 any Supreme Court authority holding the services he requested were constitutionally required

18 under the circumstances presented.  Accordingly, because there was no clearly established

19 Supreme Court precedent, the state appellate court's conclusion that the funds could be

20 granted only for reasonable, relevant and necessary investigative services was not contrary to

21 Supreme Court law.  28 U.S.C. § 2254(d).

22      Even if petitioner were able to establish that the state appellate court's decision was an

23 unreasonable application of clearly established law, however, petitioner fails to demonstrate

24 how any of the trial court's decisions had a substantial or injurious effect or influence in

25 determining the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

26 Petitioner argues that the trial court denied him funds for a medical expert to opine about the

27 depth of the cut to the victim's throat and whether or not the individual who cut her throat

28 was left-handed.  He also requested appointment of a criminalist and DNA specialist in order

United States District Court
For the Northern District of California

1   to confirm his theory that a third person was present at the time of the crime.  Pet. at 15-16.

2   Petitioner acknowledges, however, that the trial court authorized funding for his investigator

3   to interview the state's criminologist.  Id. at 16.  Nor does he not contest the state appellate

4   court's finding that the trial court specifically granted funds for a defense investigator to

5   question the prosecution witnesses and to report back if there was some factual basis for the

6   appointment of separate medical, DNA, or fingerprinting experts.  Slip Op. at 10-11.  Under

7   such circumstances, the state appellate court reasonably concluded petitioner's requests for

8   additional experts were speculative.

9       Petitioner also argues he was denied an opportunity to examine the prosecution's

10  evidence.  Pet. at 17.  As noted, however, the prosecutor and petitioner had arrived at an

11  agreement whereby petitioner's investigator could view the physical evidence, take notes,

12  photograph it, and convey his findings to petitioner.  Resp. Ex. J. at 18-19.  Consequently,

13  irrespective of the propriety of the trial court's decision as to petitioner's access to evidence,

14  petitioner has not demonstrated how any such decision was prejudicial.

15      Petitioner further complains that the trial court abused its discretion in denying

16  petitioner advisory counsel.  As the state appellate court noted, however, the majority of

17  petitioner's requests for expert witnesses and separate testing were eventually granted, some

18  at the behest of petitioner's subsequently-appointed counsel, and that petitioner failed to

19  show how an earlier grant of any of such requests would have led to a different result or that

20  the denial of any request resulted in prejudice to his case.  Slip Op. at 10-11.  Indeed,

21  petitioner acknowledges that once the Public Defender was reappointed as his attorney,[4] he

22  was able to obtain additional discovery and evidence that had been denied to petitioner, and

23  that he was able to show the blood and shoe-prints of a third person were found at the scene.

24  Petition at 24.

25      With respect to petitioner's claim that various judges made comments demonstrating

26  animosity towards him, the appellate court reasonably found "Judge Ball's comment

27

28      [4] As noted, the appointed attorney at such time was not the same attorney as initially
    had been appointed from that office.

United States District Court

For the Northern District of California

1    regarding defendant's choice to represent himself after his appointed counsel refused to file a

2    motion to have the victim arrested showed familiarity with prior hearings and did not

3    demonstrate judicial anger." Slip. Op. at 11.  Petitioner points to only a few additional

4    comments that allegedly demonstrate animosity:  Judge Ball's observation that petitioner was

5    pro se because his attorney did not want to have the victim arrested; his statement that if he

6    were to appoint advisory counsel, it would be the same attorney, and his finding that

7    petitioner was obligated to obtain his own transcripts.  See Petit. at 22-23.  The state

8    appellate court's conclusion that such comments did not demonstrate animosity is reasonable.

9    Moreover, petitioner failed to object to any comment he believed showed judicial

10   misconduct, and, consequently, he is deemed to have waived his misconduct claims on

11   appeal.  People v. Wader, 5 Cal. 4th 610, 646-47 (1993).  As a further result, any federal

12   claims alleging judicial misconduct are procedurally defaulted.  See Coleman v. Thompson,

13   501 U.S. 722, 729 (1991) (holding federal courts will not review question of federal law

14   decided by state court if decision of state court rests on state law ground that is independent

15   of federal ground and adequate to support judgment).  California's contemporaneous-

16   objection requirement is a valid state procedural bar.  Ylst v. Nunnemaker, 501 U.S. 797,

17   799, 806 (1991); Rich v. Calderon, 187 F.3d 1064, 1070 (9th Cir. 1999).  Petitioner claims it

18   is unclear that the state court denied relief because of procedural default.  See Traverse at 22.

19   The record, however, clearly reflects the state appellate court's "reli[ance] on the procedural

20   bar as an independent basis for its disposition of the case."  See Caldwell v. Mississippi, 472

21   U.S. 320, 327 (1985); Slip. Op. at 11 ("[D]efendant failed to object to any comment he

22   believed showed judicial misconduct.")

23        Finally, with respect to the transcript petitioner requested, while, as petitioner notes,

24   "the State must provide an indigent defendant with a transcript of prior proceedings when

25   that transcript is needed for an effective defense or appeal," a petitioner must make a

26   showing of particularized need for such a transcript.  Britt v. North Carolina, 404 U.S. 226,

27   227 (1971).  Here, petitioner does not explain how the transcript he requested, of a prior San

28   Diego County proceeding in which the victim testified, was necessary to his defense.

1    Moreover, petitioner concedes that the trial court agreed to order the government to produce

2    the transcript if the information was reasonably accessible to them; significantly, petitioner

3    has not shown any prejudice by reason of the court's rulings on his request.  See Traverse at

4    20; Pet. Ex. B-9 at 32 (ordering government to determine if transcript exists).

5        In sum, there was no deprivation of petitioner's right to represent himself based on the

6    denial of ancillary defense services, and the California Court of Appeal's determination as to

7    the denial of such requests was neither contrary to nor an unreasonable application of federal

8    law as established by the Supreme Court.  Likewise, there was no unreasonable

9    determination of the facts, nor has petitioner demonstrated how any of the trial court's

10   various decisions had a substantial or injurious effect or influence in determining the jury's

11   verdict.  Accordingly, petitioner is not entitled to habeas relief on this claim.

12       4.    Admission of Evidence of Prior Conduct

13       Petitioner asserts that the admission of prior conduct violated his right to due process.

14   A defendant's due process rights may be violated where a jury is permitted to hear evidence

15   of prior crimes or bad acts committed by the defendant.  See Marshall v. Lonberger, 459 U.S.

16   422, 438-39 n.6 (1983).  A state court's procedural or evidentiary ruling is not subject to

17   federal habeas review, however, unless the ruling violates federal law, either by violating a

18   specific federal constitutional or statutory provision or by depriving the defendant of the

19   fundamentally fair trial guaranteed by due process.  See Pulley v. Harris, 465 U.S. 37, 41

20   (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).  Accordingly, a

21   federal court cannot disturb on due process grounds a state court's decision to admit evidence

22   of prior crimes or bad acts unless the admission of the evidence was arbitrary or so

23   prejudicial that it rendered the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d

24   1355, 1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479

25   U.S. 839 (1986).

26       A statute or rule of evidence allowing admission of evidence of prior crimes to show a

27   propensity to commit the charged offense does not facially violate due process if the

28   evidence to be admitted is subject to a balancing test by the trial court.  See United States v.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   LeMay, 260 F.3d 1018, 1031 (9th Cir. 2001) (holding new federal rules of evidence allowing

2   evidence of prior sexual offenses to show propensity to commit charged offense do not

3   violate due process, because evidence still subject to balancing test by trial court and thus to

4   meaningful appellate review); cf. Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008)

5   (holding because Supreme Court expressly reserved question of whether introduction of

6   evidence of prior crimes to show propensity for criminal activity could ever violate due

7   process, state court's rejection of claim did not unreasonably apply clearly established federal

8   law).

9          Here, petitioner moved at trial to exclude evidence of his having previously forced

10   two other women to submit to sexual acts with him.  The first witness testified that in August

11   1984, when she was 19 years old, petitioner approached her at a bus stop and asked for

12   directions.  She agreed to show him directions and got in his car.  He told her to look at the

13   rifle in the back seat, and he also showed her a knife and threatened to use the weapons if she

14   was not cooperative.  He eventually took her to an out-of-the-way area, and, holding the

15   knife, ordered her to undress and raped her.  The second witness testified that she had a

16   romantic relationship with petitioner in 1984, and after she ended it, she went to his

17   apartment to retrieve some mail.  While she was at petitioner's apartment, petitioner locked

18   the doors and windows, and then forcibly sodomized her and forced her to orally copulate his

19   penis. He used a knife to force her compliance, and threatened to cut her throat if she made

20   any noise.  Slip. Op. at 12.

21          Petitioner objected to the admission of this evidence on federal due process grounds

22   and California Evidence Code §§ 1108 and 352, and the trial court overruled the objections

23   Before admitting the evidence, however, the trial court balanced the probative value of the

24   evidence against its prejudicial effect.  See, e.g., Resp. Ex. K (hereinafter "RT") at 49, 53-55,

25   58-62, 88-89.  In particular, the trial court considered the similarity of the prior acts to the

26   instant attempted rape and assault and the reliability of the evidence as to the prior acts,

27   including the proffered substance of the witnesses' testimony and the fact that petitioner was

28   convicted of many of the charges.  Id. at 49-61.

The state appellate court, in rejecting petitioner's claim under state law, observed:

> The trial court carefully instructed the jury that the prior offenses were uncharged in the current case, that they had to be proved by a preponderance of the evidence, that certain things could be inferred from that, but that the burden of proving the charged crimes was beyond a reasonable doubt.

> Under Evidence Code section 1108, evidence of prior sex crimes is relevant and admissible as evidence having a tendency to prove a willingness to commit such crimes. This evidence is subject to exclusion under Evidence Code section 352, however, under the usual rules, if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. The Supreme Court concluded that this safeguard enabled Evidence Code section 1108 to comport with due process. (People v. Falsetta (1999) 21 Cal.4th 903, 912-922.) On review, "the trial court's exercise of discretion in admitting evidence under . . . section 352 will not be disturbed unless the court acted in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (People v. Yovanov (1999) 69 Cal.App.4th 392, 406.)

> Defendant asserts that even if evidence of his prior sex crimes was admissible, the testimony regarding his use of a knife to threaten his victims was not allowed because the alleged use of a knife was not a part of the actual sex offense and in fact the enhancements concerning his use of a weapon were found not true in both prior crimes. He also insists that there was no evidence in the present case that he actually threatened the victim with a knife.

> But in both prior crimes, defendant's alleged use of a knife was a potent threat with which both victims were coerced into sex acts. Defendant had relied on the defense of consent, and thus the threatened use of a knife was an integral part of these crimes of sexual assault. In addition to this evidence being considered on the issue of defendant's propensity to commit such crimes, it could also be considered in the present case as bearing on his motive or intent. (See People v. Falsetta, supra, 21 Cal.4th at p. 922.)

> Defendant also insists the evidence was more prejudicial than probative and thus the trial court erred in failing to exclude it under Evidence Code section 352. We disagree.

> In determining whether to admit evidence under Evidence Code section 352, the trial court has broad discretion to assess "whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124.) The trial court must consider such factors as "its nature, relevance, and possible remoteness, the degree of certainty of its

commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (People v. Falsetta, supra, 21 Cal.4th at p. 917.) Moreover, the trial court's exercise of its discretion under section 352 will not be disturbed on appeal except on a showing that the discretion was exercised in an arbitrary, capricious or absurd manner that resulted in a manifest miscarriage of justice. (See People v. Brown (2000) 77 Cal.App.4th 1324, 1337.)

Slip. Op. at 12-14.

The California Court of Appeal's rejection of petitioner's evidentiary error claim was not contrary to, nor an unreasonable application of, Supreme Court law. See, e.g., United States v. LeMay III, 260 F.3d 1018, 1027-29 (9th Cir. 2001) (holding evidence in federal child molestation case admissible where court balanced prejudice under Federal Rule of Evidence 403). As the Court of Appeal noted, the admitted evidence was subject to a balancing test by the trial court and the evidence was highly relevant, showing both a pattern of taking sexual advantage of female acquaintances and a preference for using a knife to obtain compliance. In short, the trial court's decision to admit the evidence of prior crimes was not arbitrary nor was the admission of such evidence so prejudicial that it rendered the trial fundamentally unfair.

Moreover, there is no showing that the challenged evidence had a substantial or injurious effect or influence in determining the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). First, the trial court gave a limiting instruction that the evidence of petitioner's prior offenses could only be considered if the jury was satisfied that the prosecution had proved by a preponderance of the evidence that petitioner had committed those offenses, and that even if the jury was so satisfied, they were not required to infer petitioner had a disposition to commit sexual offenses; the jury was further instructed that such evidence was not sufficient by itself to prove that petitioner committed the challenged crime. CT at 820. The jury is presumed to have followed the court's limiting instruction.

United States District Court
For the Northern District of California

1   See Aguilar v. Alexander, 125 F. 3d 815, 820 (9th Cir. 1997).  Second, the prosecution's

2   evidence against petitioner, both testimonial and physical, was exceptionally strong, while

3   petitioner's defense was based almost exclusively on the speculative theory that after

4   petitioner left the victim at the side of the road, someone other than petitioner happened upon

5   her and decided to cut her throat.  Further, the premise underlying petitioner's defense, the

6   victim's asserted involvement with drugs, even if accepted, was not inconsistent with a

7   finding that petitioner sexually assaulted her and responded with violence when she resisted.

8        5.     Omission of Challenged Jury Instruction

9        A criminal defendant is entitled to adequate instructions on the defense theory of the

10  case.  Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000).  A court's failure to so instruct

11  violates due process if "'the theory is legally sound and evidence in the case makes it

12  applicable.'"  Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir.2006) (quoting Beardslee v.

13  Woodford, 358 F.3d 560, 577 (9th Cir. 2004)).  A defendant is not entitled, however, to have

14  jury instructions stated in his precise terms, provided the instructions, as given, adequately

15  embody the defense theory.  United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996).

16       Petitioner contends the trial court's refusal of a defense instruction regarding his

17  mental state violated his right to due process.  When a petitioner claims that a jury instruction

18  was wrongly omitted, an examination of the record is required, for purposes of determining

19  what was given and what was refused and whether the given instructions adequately

20  embodied the defendant's theory.  See United States v. Tsinnijinnie, 601 F.2d 1035, 1040

21  (9th Cir. 1979), cert. denied, 445 U.S. 966 (1980).  The omission of an instruction is less

22  likely to be prejudicial than a misstatement of the law, see Walker v. Endell, 850 F.2d 470,

23  475-76 (9th Cir. 1987) (citing Henderson v. Kibbe, 431 U.S. at 155), and a state trial court's

24  refusal to give an instruction does not alone raise a ground cognizable in a federal habeas

25  proceeding, Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  The error must so

26  infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth

27  Amendment.  See id.

28       Here, the proposed defense instruction stated:

23

United States District Court

For the Northern District of California

> Within the meaning of the preceding instruction [on assault with intent to commit rape], the prosecution must prove not only that the defendant assaulted the victim for the purpose of engaging in some type of sexual activity, but more particularly must establish that the type of sexual activity the accused intended was sexual intercourse as opposed to some other sexual activity or criminal offense.
>
> The intent, if any, with which an assault is committed is a fact to be inferred from outward facts and surrounding circumstances. A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork.
>
> You are instructed that the prosecution has the burden of proving beyond a reasonable doubt that the defendant perpetrated an assault with intent to commit rape, as opposed to any other sexual assault. You may not infer that because the defendant has committed, if you believe he has, a prior rape, that he necessarily intended the same sexual activity in the current proceeding. The fact, if you believe it to be proved, that the defendant previously committed the offense of rape is not sufficient by itself to prove beyond a reasonable doubt that he harbored the same intent on 5/21/99.

Slip. Op. at 15; CT at 867.

The prosecutor objected, on the grounds that the instruction was both argumentative and covered by other instructions, noting that the instruction reiterated the elements of the offenses and argued reasonable doubt, which burden was covered elsewhere, as was the admonition as to evidence of prior acts. RT at 1571-72. The trial court agreed with the prosecutor's objection and refused the instruction. Id. at 1572.

The state appellate court reviewed the record and reasonably determined that the omitted instruction was cumulative. Slip. Op. at 16. There was no due process violation here, where the jury was instructed under CALJIC No. 9.09, which set forth each of the elements of the crime of assault with intent to commit rape, including that the assault must be made with the specific intent to commit rape. RT at 1813-1814. The jury was also instructed on the definition of assault (CALJIC No. 9.00), the requirement that the defendant possess the present ability to apply force (CALJIC No. 9.01), and the definition of rape (CALJIC No. 10.00). Slip Op. at 16; RT 1813-15. These instructions cover the substance of the first paragraph of the requested defense instruction.

24

1    The substance of the second paragraph of the proposed defense instruction was

2   covered by standard instructions regarding the respective duties of judge and jury (CALJIC

3   No. 1.00), direct and circumstantial evidence, (CALJIC No. 2.00), and the sufficiency of

4   circumstantial evidence (CALJIC No. 2.01).  RT at 1798-99; CT at 795-96, 802-05.  The

5   substance of the third paragraph was covered by standard instructions on the presumption of

6   innocence, reasonable doubt, and burden of proof (CALJIC No. 2.90) and a modified

7   instruction, based on CALJIC No. 2.50.01, as to propensity evidence and evidence of other

8   sexual offenses.  RT at 1807-08, 1811; CT at 820-21, 830.  Moreover, as noted by the state

9   appellate court, the prosecutor, in his closing argument, told the jury that it was the

10   prosecution's burden to prove beyond a reasonable doubt that petitioner had an intent to rape

11   the victim.  Slip Op. at 16; RT at 1631-33.  The state appellate court reviewed the record and

12   reasonably determined that the omitted instruction was cumulative and that the trial court

13   correctly instructed the jury as to each offense charged.  Slip Op. at 16.

14    In sum, the instructions given by the trial court adequately embodied petitioner's

15   theory as outlined in his proposed instruction.  See Tsinnijinnie, 601 F.2d at 1040.

16   Consequently, petitioner has not demonstrated an error of constitutional dimension, and the

17   California Court of Appeal's rejection of petitioner's instructional error claim was not

18   contrary to, or an unreasonable application of, Supreme Court precedent.  28 U.S.C. §

19   2254(d).  Nor is there evidence that the instructions had a substantial or injurious effect or

20   influence in determining the jury's verdict, in light of the totality of the instructions given.

21   See Brecht v. Abrahamson, 507 U.S. at 637-38.

22   C.    Request for Evidentiary Hearing

23    Petitioner has requested an evidentiary hearing on all five of his claims.  Respondent

24   disagrees that any claim made by petitioner requires an evidentiary hearing under 28 U.S.C.

25   § 2254(e)(2).

26    Under AEDPA, "[i]f the applicant has failed to develop the factual basis of a claim in

27   State court proceedings, the court shall not hold an evidentiary hearing on the claim unless

28   the applicant shows that (A) the claim relies on (i) a new rule of constitutional law, made

1   retroactive to cases on collateral review by the Supreme Court, that was previously

2   unavailable; or (ii) a factual predicate that could not have been previously discovered through

3   the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to

4   establish by clear and convincing evidence that but for constitutional error, no reasonable

5   factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C.

6   § 2254(e)(2).

7        The United States Supreme Court has interpreted the introductory language of

8   § 2254(e)(2) to provide that where a petitioner has exercised diligence in order to "develop

9   the factual basis" of his claims in state court, the requirements of § 2254(e)(2)(A) and (B)

10  do not apply to his request for an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420,

11  435; see also Holland v. Jackson, 542 U.S. 649, 652-53 (2004).  In other words, a petitioner

12  who has exercised such diligence will be taken out of the purview of section 2254(e)(2), and,

13  as the Ninth Circuit has characterized the process, subjected to the evidentiary standard in

14  "pre-AEDPA" cases.  See Griffey v. Williams, 345 F.3d 1058 (9th Cir. 2003), vacated on

15  other grounds as moot, 349 F.3d 1157 (9th Cir.2003).

16       Accordingly, "[a] petitioner who avoids the reach of § 2254(e)(2) qualifies for an

17  evidentiary hearing if the petitioner alleges facts, that if proven, would entitle him to relief

18  and the state court trier of fact has not, after a full and fair hearing, reliably found the relevant

19  facts."  Griffey, 345 F.3d at 1065 (citing Jones v. Wood, 114 F.3d 1002, 1010, 1013 (9th Cir.

20  1997)).  "In other words, petitioner must allege a colorable constitutional claim."  Turner v.

21  Calderon, 281 F.3d 851, 890 (9th Cir. 2002).  There is, however, no "per se rule requiring an

22  evidentiary hearing whenever a petitioner has made out a colorable claim."  Id.  "Rather, a

23  petitioner must establish that his allegation. . ., if proven, would establish a constitutional

24  deprivation."  Id.  "Entitlement to an evidentiary hearing based on alleged ineffective

25  assistance, for example, requires a showing that if [the petitioner's] allegations were proven

26  at the evidentiary hearing, deficient performance and prejudice would be established."  Id.

27  Finally, where a petitioner is unable to make the showing of diligence required, he will be

28  subjected to the more stringent standards contained in § 2254(e)(2)(A) and (B). Williams,

United States District Court
For the Northern District of California

1   529 U.S. at 435; Holland, 542 U.S. at 652.

2       The record presented herein contains nothing to suggest petitioner requested an

3   evidentiary hearing in his appellate brief on direct appeal in the state appellate court.[5]

4   Diligence "depends upon whether petitioner made a reasonable attempt, in light of the

5   information available at the time, to investigate and pursue [his] claims in state court."

6   Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005) (quoting Williams, 529 U.S.

7   at 435). "Diligence requires in the usual case that the prisoner, at a minimum, seek an

8   evidentiary hearing in state court in the manner prescribed by state law." Williams, 529 U.S.

9   at 435. Where a petitioner brings his claims only on direct review before the state appellate

10  court, fails to request an evidentiary hearing there, and fails to file a state habeas petition as

11  to those claims, such petitioner has "failed to develop the factual basis of his claim in state

12  court proceedings." Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001). (Holding

13  petitioner's "inaction[] show[ed] insufficient diligence to satisfy the standard set forth in

14  Williams"). Here, because petitioner cannot be said to have exercised diligence in

15  developing the factual bases of the instant claims in state court, his request must be subjected

16  to the more stringent standards of § 2254(e)(2).

17      In that regard, petitioner has not cited to a new rule of constitutional law made

18  retroactive on collateral review in this case, see § 2254(e)(2)(A)(ii), and has neither

19  articulated nor demonstrated that "new" evidence exists that could not have been previously

20  discovered or raised in the state court proceedings through the exercise of due diligence. See

21  § 2254(e)(2)(A)(I). Permitting an evidentiary hearing on issues that could have been raised

22  in the state court proceedings, but were not, would only serve to provide "an alternative

23  forum for trying facts and issues which a prisoner made insufficient effort to pursue in state

24  proceedings."Williams, 529 U.S. at 437.

25      Alternatively, even if petitioner had requested an evidentiary hearing before the state

27      [5] To the extent any of petitioner's previous briefing before the state courts may not
28  have been included in the record herein, petitioner does not claim it contains a request for an
    evidentiary hearing.

1  courts, thus employing the requisite diligence, petitioner has not made clear "what more an

2  evidentiary hearing might reveal of material import."  See Gandarela v.Johnson, 286 F.3d

3  1080, 1087 (9th Cir. 2002) (denying petitioner's request for evidentiary hearing on his

4  assertion of actual innocence where petitioner "failed to show what more an evidentiary

5  hearing might reveal of material import").  Petitioner's claims are capable of resolution by

6  reference to the state court record and the documentary evidence petitioner has submitted

7  herein.  Accordingly, petitioner's request for an evidentiary hearing will be denied.  See

8  Griffey, 345 F.3d at 1067 (holding, even where petitioner had shown diligence otherwise

9  entitling him to evidentiary hearing, petitioner not entitled to evidentiary hearing where

10  claims could be resolved by reference to state court record and documentary evidence

11  submitted); see also Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994).  For the same

12  reasons, petitioner's request for oral argument likewise will be denied.

**CONCLUSION**

14      For the reasons stated above, the petition for a writ of habeas corpus is hereby

15  DENIED.

16      The Clerk shall close the file.

17      IT IS SO ORDERED.

18  DATED: September 16, 2008

19                              MAXINE M. CHESNEY

20                              United States District Judge